UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
In re:

BEAUX EQUITIES LLC,

Debtor.
----------------------------------------
BEAUX EQUITIES LLC

                     Plaintiff,

       -against-

SHORIVGER TRUST, RAPHAEL
GROSSMAN AS TRUSTEE OF THE
SHORIVGER TRUST, and ISRAEL
GROSSMAN,

                     Defendants.

Chapter 11 (Subchapter V)
Case No.: 25-40119-jmm

Adv. Proc. No.: 25-01105-jmm

-----------------------------------------------------------

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S ADVERSARY PROCEEDING COMPLAINT

Lawrence R. Kulak, Esq.
1078 E. 15th Street
Brooklyn, New York 11230
Tel: (646) 213-0030
kulaklaw39@gmail.com

Defendants Shorivger Trust, Raphael Grossman as Trustee of the Shorivger Trust and Israel Grossman (collectively the "Defendants"), by and through their attorney, Lawrence R. Kulak, Esq., submit this Memorandum of Law in support of their motion to dismiss Plaintiff-Debtor Beaux Equities LLC's ("Plaintiff-Debtor") Complaint (the

"Complaint"), pursuant to Fed. R. Civ. Pro. Rules 12(b)(6), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7012.

## PRELIMINARY STATEMENT

The instant motion is brought pursuant to pursuant to Fed. R. Civ. Pro. Rules 12(b)(6), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7012.  The relief sought is the dismissal of the Plaintiff'-Debtor's Complaint in this Adversary Proceeding. The Complaint contains three causes of action: 1- a Declaratory Judgment that a deed executed by the Debtor conveying real property to Shorivger Trust and delivered to Shorivger Trust was a mortgage rather than a deed; 2-  a Declaratory Judgment that the "mortgage" is void and 3- Objection to the claim filed by Shorivger Trust in the underlying Bankruptcy Proceeding.

Since the second and third causes of action are only relevant and justiciable in the event the Plaintiff-Debtor is successful on its first cause of action and therefore are rendered moot in the event the Plaintiff -Debtor is unsuccessful on its first cause of action, this motion will be directed towards the first cause of action.

The first cause of action must be dismissed as being  barred by the well-established New York State doctrine of equitable estoppel.  As will be fully discussed below, Plaintiff-Debtor relies upon two documents discussed, prepared and signed the day *after* the deed and transfer documents were signed.  Those documents contained a request by Yaakov Pollak, the sole member of the Plaintiff-Debtor that the deed conveying the real property to Shorivger Trust not be recorded until December 31, 2016, which request was agreed to by Shorivger Trust in reliance  upon an express agreement by Yaakov Pollak, the sole member of the Plaintiff-Debtor that the Debtor would *not to take any mortgages against the real property while the deed was*

***unrecorded.***  The public records of the Kings County Clerk's Office reveal that the Plaintiff-Debtor blatantly breached that promise and took two mortgages against the real property in the total amount of $1,124,985 causing Shorivger Trust significant financial harm.   Under the doctrine of equitable estoppel, the Plaintiff-Debtor cannot in any way use the two subsequent agreements against the Defendants due to the Plaintiff-Debtor's misconduct in this regard. A motion to dismiss such as the instant motion maybe based upon an Affirmative Defense such as Equitable Estoppel.  *Hecker v. Deere &Co.,* 496 F. Supp. 2d 967 (Dt.Ct. W.D.Wisconsin 2007).

## STATEMENT OF JURISDICTION

This Court has jurisdiction over the Debtor's Chapter 11 case, this adversary proceeding and the Motion pursuant to 28 U.S.C. §§157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §§157(b)(2)(A) and (E). Venue is proper in this district pursuant to 28 U.S.C. §§1408 and 1409.

## STATEMENT OF FACTS

Starting in November 2013, at the request of Yaakov Pollak (hereinafter Yaakov) Shorivger  Trust advanced money to entities designated by Yaakov and which were owned by him.  The money was to be used as capital for the entities.  See Affirmation of Israel

Grossman filed in support of the instant motion (Hereinafter "Israel Affirmation").  Yaakov was and continues to be the sole member of the Debtor.  See Plaintiff/Debtor's Complaint Paragraph 16. The capital advance requests were made by Yaakov to Israel Grossman (hereinafter Israel). Israel is the brother of Raphael Grossman who was the Trustee of Shorivger Trust during the aforementioned time.   The documents memorializing the advanced money were Heter Iskas prepared by Yaakov. See Israel Affirmation.

During the spring of 2015, Yaakov requested more money from the Trust.  Israel told him that he and his brother were concerned because other than $100,000, none of the capital advanced up to that time had been repaid.  Repayment of the capital advances, not any profits, was guaranteed under the Heter Iskas.  See Israel Affirmation.

Yaakov offered to give Shorivger Trust a mortgage against real property owned by the Debtor located at 5405 18th Avenue Brooklyn, NY; 5409 18th Avenue Brooklyn, NY and 5411 18th Avenue Brooklyn, NY (hereinafter collectively the "Real Property").  Yaakov said the mortgage would secure repayment of the previously advanced capital as well as future advances.  Yaakov prepared a proposed mortgage document for review by Israel and his brother. See Israel Affirmation.

Both Israel and his brother firmly rejected accepting any form of collateral including a mortgage to secure repayment. Israel advised Yaakov accordingly. See Israel Affirmation.

Subsequently, several discussions took place between Israel and Yaakov. See Israel Affirmation.  In early 2016, Yaakov told Israel that he would be willing to sell the Trust the real property.  See Israel Affirmation.  On March 11, 2016, at Israel's request, Yaakov e-mailed Israel the Operating Agreement for the Debtor showing that he was the sole member and therefore had the authority to transfer the real property.  At that time the Trust had made

approximately $1,889,200 in capital advances.  That amount was the approximate amount of the real property's net equity.  Yaakov told Israel that he would convey the real property to the Trust if in addition to the capital advances already made, the additional sum in the approximate amount owed under the first mortgage held by Signature Bank to wit: $1,200,000 was also paid.  See Israel Affirmation.

Israel discussed the purchase proposal with his brother who agreed to the purchase but said the Trust needed time to pay the $1,200,000.  Israel told Yaakov that the Trust agreed to purchase the real property but needed several months to pay the $1,200,000.  See Israel Affirmation.   Accordingly, on March 29, 2016, Yaakov executed and delivered a deed conveying title to the real property to the Trust as well as all of the required ACRIS transfer documents.  Exhibit A of the Declaration of Attorney Lawrence Kulak filed in support of the instant motion (Hereinafter "Kulak Affirmation").

On March 30, 2016, Yaakov telephoned Israel and requested that Shorivger Trust delay recording the deed for several months, because he anticipated having the funds necessary to repurchase the property from the Trust.  See Israel Affirmation.  Israel said he was not inclined to agree because the Trust would not be protected under the New York State Recording Statues but would speak to his brother Raphael.  Raphael agreed with Israel that the Trust had too much money at stake to have an unrecorded deed.  See Israel Affirmation.

Israel told Yaakov that the Trust needed to record the date as soon as possible.  Yaakov said he would sign an agreement promising that he would not take any new mortgages against the Real Property while the Deed was unrecorded.  Yaakov also said he was willing to compensate the Trust for agreeing not to record by paying it any profits owed under the heter iskas.  See Israel Affirmation.   Israel discussed Yaakov's new proposal with Raphael.

They both believed they could rely upon Yaakov who not only was an observant Jew but also a relative, to honor his promise.

Accordingly, Israel prepared a written agreement for Yaakov to sign wherein Israel agreed not to record the deed until December 31, 2016, Yaakov agreed not to take any additional mortgages against the real property while the Deed was unrecorded and would pay the Trust any profits under the heter iskas.  See Israel Affirmation.   The agreement was dated March 30, 2016, and signed by Yaakov.  Kulak Affirmation Exhibit B.  The agreement was not intended to nor did it in anyway alter or compromise the absolute conveyance of title of the real property to Shorivger Trust that occurred upon execution and delivery of the deed on March 29, 2016. See Israel Affirmation.

On March 31, 2016, at Yaakov's request, Israel faxed a handwritten statement to Yaakov signed by Israel stating that the deed would not be recorded until December 31, 2016, and upon giving Yaakov 30 days' notice. Kulak Affirmation Exhibit C.

During the end of 2016, Yaakov and Israel had several telephone conversations wherein Yaakov said as of that time he did not have the ability to repurchase the real property but was confident he would during the beginning of 2017 and asked that Shorivger Trust continue not to record the deed.  See Israel Affirmation.  Solely relying upon Yaakov's express agreement that he would not take any mortgages against the real property while the deed was unrecorded Israel agreed.  See Israel Affirmation.  Throughout 2017, Yaakov continued to request that the deed not be recorded and relying solely upon his earlier promise regarding not taking any additional mortgages Israel agreed.  See Israel Affirmation.

 Israel learned in November of 2017, that Yaakov was borrowing money from a hard money lender and, despite ***his express promise not to do so,*** was offering the real property as

collateral.  See Israel Affirmation.   This caused the Trust to perform a search on ACRIS and found that in blatant violation of his promise not to do so, Yaakov took advantage of Shorivger Trust's lack of protection under the New York State recording statutes and took 2 mortgages against the real property decreasing the equity in the real property by $1,124,985. The 2 mortgages were a mortgage to David Gutman in the principal amount of $ 475,000 (Kulak Affirmation Exhibit D) and a mortgage in the amount of $ 649,985 given to Kearny Bank (Kulak Affirmation Exhibit E).  As a result, on November 29, 2017, the Trust recorded the deed and transfer documents previously signed by Yaakov.  Kulak Affirmation Exhibit A.

The hard money lender Israel had heard about was Powercap Partners LLC.  As part of two loans from Powercap, one occurring on April 13, 2017, and the other on May 16, 2017, Yaakov executed a deed in lieu of foreclosure conveying the real property to Powercap as well as a declaration of restrictions regarding the real property.  Document #1 Adversary Proceeding 25-01037 Exhibit A paragraphs 13 and 14.

After learning of Yaakov's blatant lies regarding his express promise not to take any additional mortgages against the real property while the Deed was unrecorded,  on November 29 2017, the Trust recorded the deed and transfer documents previously signed by Yaakov. Kulak Affirmation Exhibit A. Prior to recording, on November 14, 2017, by email, Israel notified Yaakov that the Deed was going to be recorded.  Kulak Affirmation Exhibit F.  The notice was sent pursuant to the March 31, 2016 document.  Kulak Affirmation Exhibit C. Yaakov responded by email 61 minutes after Israel sent his email.  Yaakov's responded by saying, "As I told you earlier, we are putting together the funds (at least a significant amount) and we  *will*  secure you woth the property & or the business with equity" (misspelling in

original) (emphasis added).  Kulak Affirmation Exhibit F.  Yaakov did not in any way object to or dispute the Trust's right to record the Deed.  Nor did Yaakov make the claim that he is now making that the Deed was actually a mortgage.  Kulak Affirmation Exhibit F.  It was not until several months later, after the State Court litigation commenced that Yaakov for the first time claimed the deed was in actuality a mortgage.  See Israel Affirmation.

On December 19, 2017,  Powercap Partners LLC filed a summons and verified complaint in New York State Supreme Court Kings County (hereinafter, "State Court").  Included as Defendants were the Debtor,  and Shorivger Trust and Raphael Grossman as Trustee. Document #1 Adversary Proceeding 25-01037.

On the date certain for commencement of the jury trial, the Debtor filed its Bankruptcy Petition.  Subsequently, the Debtor commenced the instant Adversary Proceeding. The Debtor's Complaint contains three causes of action: 1- a Declaratory Judgment that a deed executed by the Debtor conveying real property to Shorivger Trust and delivered to Shorivger Trust was a mortgage rather than a deed; 2-  a Declaratory Judgment that the "mortgage" is void and 3- Objection to the claim filed by Shorivger Trust in the underlying Bankruptcy Proceeding.

## LEGAL STANDARD

To survive a motion pursuant to Fed. R. Civ. P. 12(b)(6), made applicable to this adversary proceeding by Bankruptcy Rule 7012(b), a complaint must contain allegations that set forth the plaintiff's "grounds" of her "entitle[ment] to relief." Bell Atlantic *Corp. v. Twombly,* 550 U.S. 544, 555 (2007).  The complaint must include "a short and plain

statement of the claim showing that the pleader is entitled to relief" and "give [defendants] fair notice of what the ... claim is and the grounds upon which it rests." Fed. R. Civ. P. 8(a)(2); *Twombly,* 550 U.S. at 555 (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)). This means that a complaint must contain factual allegations fulsome enough to raise plaintiff's right to relief on a particular claim above the speculative level. Id. at 555-56 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235–236 (3d ed. 2004)) ("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action."). However, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (alterations in original). Dismissal pursuant to Fed. R. Civ. Pro. 12(b)(6) is, therefore, proper when a complaint "do[es] not permit the court to infer more than the mere possibility of misconduct." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

To bring a claim for declaratory judgment under the Declaratory Judgment Act, as Plaintiff appears to be attempting here, there must be "the filing of an appropriate pleading" "[i]n a case of actual controversy within its jurisdiction". 28 U.S.C. § 2201(a). To be an actual controversy, "the dispute [must] be 'definite and concrete, touching the legal relations of parties having adverse legal interests'; and [ ] it [must] be 'real and substantial' and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.' " *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth,* 300 U.S. 227, 240-41 (1937)).

Moreover, a motion to dismiss maybe based upon an affirmative defense provided that allegations of the complaint and documents deemed to are a part thereof establish all of the elements of the defense. *Hecker v. Deere & Company,* 496 F. Supp. 2d 967, 975 (Dt.Ct. W.Dt. Wisconsin (2007)).

Here, the Plaintiff-Debtor cannot prevail due to the doctrine of equitable estoppel. As set forth in *In re RJT Food & Rest., LLC,* 670 B.R. 657, 672 (Bankr. E.D.N.Y. 2025), "The doctrine of equitable estoppel is "properly invoked where the enforcement of the rights of one party would work an injustice upon the other party due to the latter's justifiable reliance upon the former's words or conduct." *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 725 (2d Cir. 2001). Under New York law, "the elements of equitable estoppel are, with respect to the party estopped: (1) conduct which amounts to a false representation or concealment of material facts; (2) intention that such conduct will be acted upon by the other party; and (3) knowledge of the real facts." *Babitt v. Vebeliunas (In re Vebeliunas)*, 332 F.3d 85, 93-94 (2d Cir. 2003). The party asserting estoppel must show with respect to itself: "(1) lack of knowledge and of the means of knowledge of the true facts; (2) reliance upon the conduct of the party to be estopped; and (3) prejudicial change in [its] position." *Id.* at 94. "The doctrine of equitable estoppel 'should be applied with great caution when dealing with realty.' " *Wallace v. BSD-M Realty, LLC*, 142 A.D.3d 701, 36 N.Y.S.3d 884 (N.Y. App. Div. 2016)." *In re RJT Food & Rest., LLC,* at 672.

In its Complaint, the Plaintiff-Debtor expressly relies upon 2 documents it induced the Defendants to rely upon and were then breached by the Plaintiff-Debtor to its significant financial advantage causing significant financial harm to the Defendants. The doctrine of Equitable Estoppel precludes the Plaintiff-Debtor from using the 2 documents in its

Complaint, resulting in it failing to allege any facts or legal grounds that would entitle it to the requested relief under the standards of *Twombly and MedImmune,* and therefore the Complaint should be dismissed pursuant to Rule 12(b)(6).

## ARGUMENT

## I.  FIRST CLAIM FOR RELIEF

In its first cause of action, the Plaintiff essentially makes 2 arguments in its attempt to prevail: 1- according to the Plaintiff the  Deed is not notarized and 2- based upon 2 documents drafted and signed during the 2 days following execution and delivery of the Deed, the Defendants' delay in recording the Deed establishes it as a mortgage rather than a Deed.

The Deed has a duly executed certificate of acknowledgment.  Kulak Affirmation Exhibit A.  A certificate of acknowledgment attached to an instrument such as a deed raises a presumption of due execution, which presumption, in a case such as this, can be rebutted only after being weighed against any evidence adduced to  show that the subject instrument was not duly executed (see *Uvalde Asphalt Paving Co. v. City of New York,* 99 A.D. 327, 90 N.Y.S. 131). The rule as expounded by the Court of Appeals is that "a certificate of acknowledgment should not be overthrown upon evidence of a doubtful character, such as the unsupported testimony of interested witnesses, nor upon a bare preponderance of evidence, but only on proof so clear and convincing as to amount to a moral certainty" *Albany County Sav. Bank v. McCarty,* 149 N.Y. 71, 80, 43 N.E. 427; *Son Fong Lum v. Antonelli,* 102 A.D.2d 258, 260–61, 476 N.Y.S.2d 921, 923 (1984), aff'd, 64 N.Y.2d 1158, 480 N.E.2d 347 (1985).  Here, Plaintiff offered absolutely ***no proof*** in support of it argument in this regard.  Accordingly, the Plaintiff has utterly failed to rebut the presumption of validity concerning the certificate of acknowledgment.

In any event, under New York State law, in determining whether a deed was intended as security, examination may be made not only of the deed and a written agreement executed at the same time, but also of oral testimony bearing on the intent of the parties and to a consideration of the surrounding circumstances and acts of the parties. S*immons v. Reich*, 171 A.D.3d 1237, 1238 (2nd Dept. 2019); Bouffard *v. Befese, LLC,* 111 A.D.3d 868 (2nd Dept. 2013).

Since the only documents executed at the time the Deed was executed was the Deed and the required ACRIS recording documents, the Plaintiff relies upon 2 documents negotiated, drafted and executed during the 48-hour period **after** the execution and delivery of the Deed and ACRIS recording documents to establish the relief sought in the Complaint.  See Document #1 Plaintiff/Debtor's Complaint Paragraphs 36-42 and 50.  However, under the doctrine of equitable estoppel, the Plaintiff is absolutely barred from in anyway utilizing those documents.

This Court in *In re RJT Food & Rest., LLC,* 670 B.R. 657, 672 (Bankr. E.D.N.Y. 2025) (Grossman, J.)  Recently discussed the New York State Law doctrine of equitable estoppel. " The doctrine of equitable estoppel is "properly invoked where the enforcement of the rights of one party would work an injustice upon the other party due to the latter's justifiable reliance upon the former's words or conduct." *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 725 (2d Cir. 2001). Under New York law, "the elements of equitable estoppel are, with respect to the party estopped: (1) conduct which amounts to a false representation or concealment of material facts; (2) intention that such conduct will be acted upon by the other party; and (3) knowledge of the real facts." *Babitt v. Vebeliunas (In re Vebeliunas)*, 332 F.3d 85, 93-94 (2d Cir. 2003). The party asserting estoppel must show with respect to itself: "(1) lack of knowledge and of the means of knowledge of the true facts; (2) reliance upon the conduct of the party to be estopped; and (3) prejudicial change in [its] position." *Id.* at 94. *In re RJT Food &*

*Rest., LLC, supra at 672.* The Court went on to observe that, "The doctrine of equitable estoppel 'should be applied with great caution when dealing with realty. " '*Wallace v. BSD-M Realty, LLC*, 142 A.D.3d 701, 36 N.Y.S.3d 884 (N.Y. App. Div. 2016)". *In re RJT Food & Rest., LLC, supra at 672.*

In the instant matter, the application of the doctrine of equitable estoppel could not be any more clear. The Deed and ACRIS recording documents were executed and delivered to the Trust on March 29, 2016. Kulak Affirmation Exhibit A. The following day, March 30, 2016, Yaakov telephoned Israel and requested that Shorivger Trust delay recording the deed for several months, because he anticipated having the funds necessary to repurchase the property from the Trust. See Israel Affirmation. Israel said he was not inclined to agree because the Trust would not be protected under the New York State Recording Statues, but would speak to his brother Raphael. Raphael agreed with Israel that the Trust had too much money at stake to have the Deed unrecorded for any extended period of time. See Israel Affirmation.

Israel immediately told Yaakov that the Trust needed to record the date as soon as possible. In response, Yaakov said he would sign an agreement promising that he would not take any new mortgages against the Real Property while the Deed was unrecorded. Yaakov also said he was willing to compensate the Trust for agreeing not to record by paying it any profits owed under the heter iskas. See Israel Affirmation. Israel discussed Yaakov's new proposal with his brother Raphael. They both believed they could rely upon Yaakov who not only was an observant Jew but also a relative, to honor his promise. See Israel Affirmation. Accordingly, Israel prepared a written agreement for Yaakov to sign wherein Israel agreed not to record the deed until December 31, 2016, and Yaakov agreed not to take any additional mortgages against the real property while the Deed was unrecorded and would pay the Trust any profits under the

heter iskas.  See Israel Affirmation.   The agreement was dated March 30, 2016 and signed by Yaakov.  Kulak Affirmation Exhibit B.  The agreement was not intended to nor did it in anyway alter or compromise the absolute conveyance of title of the real property to Shorivger Trust that occurred upon execution and delivery of the deed on March 29, 2016.  See Israel Affirmation.

On March 31, 2016, at Yaakov's request, Israel faxed a handwritten statement to Yaakov signed by Israel stating that the deed would not be recorded  until December 31, 2016, and upon giving Yaakov 30 days notice.  Kulak Affirmation Exhibit C.   That also did not in any way compromise the Deed as an absolute conveyance of the Real Property to the Trust.  See Israel Affirmation.

In a blatant violation of his absolute promise not to take additional mortgages while the Deed was unrecorded,  which promise was relied upon by the Trust in agreeing to Yaakov's request to delay recording of the Deed, Israel learned in November of 2017, that Yaakov was borrowing money from a hard money lender and, despite *his express promise not to do so,* was offering the real property as collateral.  See Israel Affirmation.   This caused  the Trust to perform a search on ACRIS and found that in blatant violation of his promise not to do so, Yaakov took advantage of Shorivger Trust's lack of protection under the New York State recording statutes and took 2 mortgages against the real property decreasing the equity in the real property by $1,124,985.  The 2 mortgages were a mortgage to David Gutman in the principal amount of $ 475,000 (Kulak Affirmation Exhibit D) and a mortgage in the amount of $ 649,985 given to Kearny Bank (Kulak Affirmation Exhibit E).  As a result, on November 29, 2017, the Trust recorded the deed and transfer documents previously signed by Yaakov. Kulak Affirmation Exhibit A.

The hard money lender Israel had heard about was Powercap Partners LLC.  As part of

two loans from Powercap, one occurring on April 13, 2017, and the other on May 16, 2017, Yaakov executed a deed in lieu of foreclosure conveying the real property to Powercap as well as a declaration of restrictions regarding the real property.  Document #1 Adversary Proceeding 25-01037 Exhibit A paragraphs 13 and 14.

After learning of Yaakov's blatant lies regarding his express promise not to take any additional mortgages against the real property while the Deed was unrecorded, on November 29, 2017, the Trust recorded the deed and transfer documents previously signed by Yaakov. Kulak Affirmation Exhibit A.    It is almost impossible to imagine a more egregious situation wherein a promise is made not to do something by the promisor, which is relied upon by the promisee, and then the promisor blatantly breaches the promise to the significant detriment of the promisee and then the promisor attempts to use the language of the promise against the promisee.  In the instant matter all of this is proven by the public records; to wit: ACRIS showing 2 mortgages given  by Yaakov as sole member of the Plaintiff during the period when the Deed was unrecorded The "agreements" requested by Yaakov with  promises by him to induce the Trust not to give any mortgages while the Deed was unrecorded  are attached as exhibits to the instant Complaint.  The 2 mortgages given by Yaakov while the Deed was unrecorded decreased the equity in the real property by $1,124,985, all of which was to the Trust's severe financial loss and Yaakov's tremendous financial gain.  Kulak Affirmation Exhibits D and E.  It would be unfair, inequitable and unjust to allow the Plaintiff to breach the "agreements" so egregiously and be able to use the language of the "agreements" against the Defendants.

It is of critical importance that prior to recording, on November 14, 2017, by email, Israel

notified Yaakov that the Deed was going to be recorded.  Kulak Affirmation Exhibit F.  The notice was sent pursuant to the March 31, 2016 document.  Kulak Affirmation Exhibit C. Yaakov responded by email 61 minutes after Israel sent his email.  Yaakov's responded by saying, "As I told you earlier, we are putting together the funds (at least a significant amount) and we *will* secure you woth the property & or the business with equity" (misspelling in original) (emphasis added).  Kulak Affirmation Exhibit F.  Yaakov did not in anyway object to or dispute the Trust's right to record the Deed.  Nor did Yaakov make the claim that he is now making that the Deed was actually a mortgage.  The most significant aspect of his response is his use of the word "will" which means security will be given in the future. Yaakov did not say you will continue to be secured or the mortgage that we gave will continue.  He in no way even suggested that the Deed was in fact security. The unequivocal, clear, express meaning of Yaakov's response is that only if and when  the real property was repurchased would security be given for any amounts due. It was not until several months later, after the State Court litigation commenced that Yaakov for the first time claimed the deed was in actuality a mortgage.  See Israel Affirmation.

It is respectfully submitted that all of the elements of equitable estoppel are established thereby precluding the Plaintiff from relying on the 2 documents in support of its Complaint. See *In re RJT Food & Rest., LLC, supra.*  In the absence of the 2 documents, the Plaintiff fails to establish any cause of action regarding its claim that the Deed was in fact a mortgage and therefore the Complaint must be dismissed.

## II. SECOND CLAIM FOR RELIEF

By its express language, Plaintiff's second claim for relief only becomes justiciable in the event the Plaintiff is successful in its first claim for relief. See Document #1 Plaintiff/Debtor's Complaint Paragraph 55. It is respectfully submitted that the second claim for relief merely alleges speculative legal conclusions which are insufficient to state a cause of action upon which relief can be granted. See *Achtman, supra* at 337.

In any event, Plaintiff's reliance upon New General Obligations Law Section 5-703(3) is misplaced. The Deed which Plaintiff is attempting to have declared a mortgage was duly signed by Yaakov Plaintiff/Debtor's sole member. If it is determined that the Deed is actually a mortgage than the Deed/Mortgage is signed and GOL Section 5-703(3) is satisfied.

Moreover, Plaintiff's claims concerning the Heter Iskas re frivolous, nothing more than a red herring. Plaintiff does not dispute that the Heter Iskas were all signed by Yaakov. Moreover, Plaintiff does not dispute that the overwhelming majority for the Heter Iskas were signed by Yaakov as Managing Partner. Pursuant to the Heter Iskas, each time the Trust made a payment of money, it was assigned a percentage of all permissible investments, business and real estate that the Managing Partner; to wit: Yaakov owned, including his interest as sole member of the Plaintiff/Debtor. Pursuant to the Heter Iskas, each payment of money by the Trust increased the Trust's assigned interest in Yaakov's property including his sole membership interest in Plaintiff/Debtor. As such Plaintiff's second claim for relief fails to state a cause of action upon which relief can be granted and therefore must be dismissed.

### III. THIRD CLAIM FOR RELIEF

Just as with the second claim for relief, Plaintiff's third claim for relief only becomes justiciable in the event the Plaintiff is successful in its first claim for relief.  See Document #1 Plaintiff/Debtor's Complaint Paragraph 67.   Just as with the second claim for relief the third claim for relief merely alleges speculative legal conclusions which are insufficient to state a cause of action upon which relief can be granted.  See *Achtman, supra* at 337.  As such the third claim for relief fails to state cause of action upon which relief can be granted and therefore must be dismissed.

### CONCLUSION

For the reasons stated above, the Court should grant Defendants' motion to dismiss Plaintiff's adversary proceeding Complaint.

Dated: September 30, 2025
       Brooklyn, New York

*/s/Lawrence R. Kulak*
*Law Offices of Lawrence R. Kulak*
*Lawrence R. Kulak, Esq.*
*Attorney for Shorivger Trust and*
*Raphael Grossman as Trustee of*
*Shorivger Trust and Israel Grossman*
*1078 East 15th Street*
*Brooklyn, New York 11230*
*Tel: (646) 213-0030*
*kulaklaw39@gmail.com*
